**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| RONALD and BECKI CONNALLY, | : | |
| Plaintiffs, | : | |
| vs. | : | CA 12-0064-KD-C |
| STATE FARM FIRE AND CASUALTY COMPANY, et al., | : | |
| | : | |
| Defendants. | | |

## <u>REPORT AND RECOMMENDATION</u>

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the notice of removal (Doc. 1), defendant Pamela Donovan's motion for dismissal for fraudulent joinder (Doc. 2), plaintiffs' motion to strike the affidavit of Tony Nix (Doc. 13), plaintiffs' motion to remand (Doc. 15), defendants' opposition and brief in response to plaintiffs' motion to remand (Doc. 19), defendants' response and opposition to plaintiffs' motion to strike the affidavit of Tony Nix (Doc. 20), and plaintiffs' combined reply to defendants' response to motion to remand and motion to strike affidavit of Tony Nix (Doc. 21). Upon consideration of the foregoing pleadings, it is recommended that the Court **GRANT** plaintiff's motion to remand (Doc. 15) and **REMAND** this cause to the Circuit Court of Mobile County, Alabama from whence it came.

**FINDINGS OF FACT**

State Farm Fire and Casualty Company issued a homeowners policy, Policy Number 01-BE-Q252-4, to the plaintiffs on August 12, 2009, covering their home at 139 Augusta Court, Mobile, Alabama 36532. (*Compare* Doc. 1, Exhibit A, HOMEOWNERS POLICY, at 1 *with* Doc. 1, Exhibit C, Affidavit of Tony Nix, at ¶ 4.)[1] The policy had an effective date of August 12, 2009 and provided coverage through August 9, 2010. (Doc. 1, Exhibit A, HOMEOWNERS POLICY, at 1.) The face of the policy reflects dwelling coverage of $1,300,000.00 and contents coverage of $975,000.00. (*Id.*)

The policy was in full force and effect on December 26, 2009, when the plaintiffs' home was damaged by fire. (Doc. 1, Exhibit A, COMPLAINT, at ¶¶ 14-15.) At the time of the fire, the Connallys were on a family vacation in Orlando, Florida. (*Id.* at ¶ 15.) The Connallys notified State Farm of the fire loss on December 26, 2009 (*id.* at ¶ 16) and immediately returned home from their vacation (*id.* at ¶ 17).

State Farm appointed Pamela Donovan ("Donovan") as its claims representative to investigate and adjust the Connallys' claim. (*Id.* at ¶ 18.) In addition, State Farm, acting through Donovan or others, hired Harold Deese and Perry Hopkins "to investigate and opine as to the cause and origin of the fire and to rule out causes of the fire loss for anything other than arson." (*Id.* at ¶ 19.) Deese began his investigation on

---

[1]     On July 11, 2007, the Connallys' previous home was destroyed by a fire which was determined to have been caused by lightning. (Doc. 1, Exhibit A, COMPLAINT, at ¶ 8.) The plaintiffs' insurance company, Farmer's, timely adjusted the loss and paid all benefits due under the policy. (*Id.*) When Ronald Connally sought insurance coverage on the family's newly-built home, he "disclosed to State Farm's sales agent, either orally or on the application (or both), the prior fire loss of July 11, 2007, and their claim with Farmer's." (*Id.* at ¶ 11.)

January 5, 2010 and concluded it on January 13, 2010. (*Id*. at ¶¶ 20-21.) On March 5, 2010, Deese issued a report to State Farm "in which he opined that the fire which occasioned the loss was intentionally set." (*Id*. at ¶ 22.) However, Deese did "not conclude in his report that Ronald Connally, or any member of the Connally family, 'procured' the fire event which caused the loss and resulted in the subsequent claim." (*Id*. at ¶ 23.)   Contrary to Deese's report, the Alabama Fire Marshal assigned to investigate the fire "*did not* determine that the fire had been intentionally set by anyone[.]" (*Id*. at ¶ 24 (emphasis in original).)

On June 8, 2010, plaintiff Ronald Connally signed and mailed to State Farm a Sworn Proof of Loss. (*Compare* Doc. 1, Exhibit C, Sworn Proof of Loss attached to the Affidavit of Tony Nix *with* Doc. 1, Exhibit D, Ronald Connally's July 16, 2010 Examination Under Oath, at 150-151.[2]) In the Sworn Proof of Loss, plaintiffs made claim for $1,300,000 (plus 25%) for their damaged residence, $504,335.44 for damaged personal property, and $5,954.38 for additional living expenses. (*Compare id. with* Nix aff., at ¶ 7.)

On September 23, 2010, the mortgagee, Auburn Bank, mailed to State Farm a Sworn Statement in Proof of Loss. (Doc. 1, Exhibit C, Sworn Statement in Proof of Loss attached to Affidavit of Tony Nix.) The mortgagee made a claim for $1,300,000 for the damaged residence. (*Id*.)

---

[2]       Donovan was present during Ronald Connally's examination under oath. (*Id*. at 2.)

On February 7, 2011, State Farm penned a denial letter to Ronald Connally in care of his attorney, Charles, Potts, Esquire. (Doc. 1, Exhibit C, February 7, 2011 Letter attached to the Nix aff.)

> This letter is being sent to you as legal representative of the above named insured. After careful consideration, the claim of your clients, Dr. Ronald Connally and Becki Connally, is hereby denied. Our investigation has revealed your clients' involvement in procuring the fire causing this loss and they misrepresented material facts in the presentation of this claim.
>
> Your clients' insurance policy provides, in pertinent part:
>
> ### SECTION I – CONDITIONS
>
> **12. Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.
>
> ### SECTION I AND II – CONDITIONS
>
> **2. Concealment or Fraud.** This policy is void as to you and any other **insured,** if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before of after a loss.
>
> It should be noted that as per the mortgagee clause of the policy, State Farm Fire & Casualty Company will be protecting the interest of the mortgagee as well.[3] Because of these findings, the policy of insurance is void as of the date of the loss. Any unearned premium collected on this policy will be refunded to the insureds in separate correspondence.
>
> By calling your attention in this letter to certain provisions of your clients[' policy], State Farm Fire and Casualty Company does not intend to de-emphasize or waive any other provisions of the policy. State Farm Fire

---

[3]    On March 4, 2011, State Farm paid to the mortgagee $855,032.39 in settlement of its claim. (Doc. 1, Exhibit C, Nix aff., at ¶ 6.)

and Casualty Company fully and completely reserves all of its rights
under the applicable policy.

(Doc. 1, Exhibit C, February 7, 2011 Letter attached to Nix. aff. (emphasis in original;

footnote added).) This letter was signed by Tony D. Nix,[4] Team Manager for State Farm

Fire and Casualty Company. (*Id.*)[5] "As of February 17, 2011, State Farm had paid the

Plaintiffs $3,409.04 for part of their Coverage A claims (dwelling claim) and $2,000 as an

advance on the Coverage B claim (contents claim). The $1,296.590.96 balance on the

dwelling claim remains outstanding. The $502,335.44 balance on the contents claim

remains outstanding." (Doc. 1, Exhibit C, Nix aff., at ¶ 8.)

On December 23, 2011, plaintiffs Ronald and Becki Connally filed this breach of

contract, negligence/wantonness, bad faith, defamation/slander, and fraud/deceit

action against named defendants State Farm Fire and Casualty Company and Pamela

Donovan, as well as fictitious parties, in the Circuit Court of Mobile County, Alabama.

(Doc. 1, Exhibit A, COMPLAINT.) Plaintiffs assert their breach of contract claim only

against the corporate defendant, not against Pamela Donovan (*compare id.* at 12

("WHEREFORE, . . . Ronald and Becki Connally demand judgment against State Farm

for Breach of Contract for compensatory damages in an amount to be determined by a

jury, as well as prejudgment interest, attorney's fees, costs, and any other relief the

---

[4]     As is clear from his affidavit, Nix resides in Fayette County, Georgia.  (Doc. 1,
Exhibit C, Nix aff., at 3 (affidavit sworn and subscribed before a notary public on February 2,
2012 in Fayette County, Georgia).)

[5]     A copy of this letter was sent to State Farm Fire and Casualty Company's
attorney, Judson Wells, Esquire. (*Id.*)

5

Court may deem appropriate.") *with* Doc. 15, at 2 n.1 ("Donovan is not a party to Count One (breach of contract)[.]")), and now admit that Counts Two and Three of their complaint fail to state claims as to Donovan (Doc. 15, at 2 n.1 ("The Connallys concede the argument that, under Alabama law, Counts Two (negligence/wantonness in the adjustment of the claim) and Three (bad faith) fail to state claims as to Donovan."). Therefore, the complaint, as to the counts alleged against Donovan, reads, in relevant part, as follows:

## <u>COUNT FOUR</u>

### (Defamation/Slander)

51.     Plaintiffs adopt and re-allege the allegations of paragraphs 1 through 50 of their Complaint as i[f] fully set forth herein.

52.     State Farm, Donovan, and Defendants A, B, C, D, E, F, G, H, I and J, jointly and separately, accused Ronald Connally, and/or other members of the Connally household, of "procuring the fire" that caused the loss and resulted in the claim.

53.     This accusation was made by State Farm, Donovan, and Defendants A, B, C, D, E, F, G, H, I and J, jointly and separately, both orally and in writing and was published to others.

54.     The accusation accuses Ronald Connally, and/or other members of the Connally family, of committing the crime of arson.

55.     The accusation was false, State Farm, Donovan, and/or Defendants A, B, C, D, E, F, G, H, I and J, knew or should have known it was false when it was made.

56.     The accusation was, and is, defamatory and slanderous *per se* under Alabama law.

57.     State Farm, Donovan, and Defendants A, B, C, D, E, F, G, H, I and J, jointly and separately, have never retracted the defamatory and slanderous accusation.

58.     As a proximate consequence of the defamatory and slanderous accusations of the Defendants, jointly and separately, the Connallys have suffered damages as aforesaid and claim all compensatory damages due to them under Alabama law. In addition, the Connallys claim that the conduct of the Defendants, jointly and separately, was intentional, willful, wanton, and/or malicious and attended by such facts as to establish a reckless or conscious disregard for the rights of the Connallys sufficient to support an award of punitive damages.

WHEREFORE, premises considered, Ronald and Becki Connally demand judgment against State Farm, Donovan, and Defendants A, B, C, D, E, F, G, H, I and J, jointly and separately, for Defamation and Slander and claim compensatory and punitive damages in an amount to be determined by a jury, as well as prejudgment interest, attorney's fees, costs, and any other relief the Court may deem appropriate.

## COUNT FIVE

## (Fraud/Deceit)

59.     Plaintiffs adopt and re-allege the allegations of paragraphs 1 through 58 of their Complaint as i[f] fully set forth herein.

60.     State Farm, through its marketing and advertising campaigns, as well as the representations of its selling agents, misrepresented the quality of its homeowner's insurance policy and claims handling process.

61.     Further, State Farm and Ronald Connally were in a confidential relationship of trust such that State Farm was under an obligation at all times to inform Ronald Connally that it would not honor the commitments it agreed to in the policy at issue in this case.

62.     Ronald Connally relied to his and his family's detriment on the false and untrue representations of State Farm and purchased the policy at issue in this case.

63.     Had Ronald Connally known that State Farm would not honor its contractual obligations and would, instead, engage in bad faith claims handling and make untrue, defamatory accusations with respect to himself and his family, he would not have purchased the policy and

would, instead, have purchased a homeowner's policy from another insurance company so that the fire loss of December 26, 2009, would have been covered.

64.     As a proximate consequence of this fraud, suppression and deceit, Ronald Connally and his family have suffered damages as aforesaid and claim all compensatory damages due to them under Alabama law. In addition, the Connallys claim that the fraudulent conduct of State Farm, directly and vicariously through its agents, servants, and employees, was intentional, willful, wanton, and malicious and attended by such facts as to establish a reckless or conscious disregard for the rights of the Connallys sufficient to support an award of punitive damages.

WHEREFORE, premises considered, Ronald and Becki Connally demand judgment against State Farm, Donovan, and Defendants A, B, C, D, E, F, G, H, I and J, jointly and separately, for Fraud and Deceit and claim compensatory and punitive damages in an amount to be determined by a jury, as well as prejudgment interest, attorney's fees, costs, and any other relief the Court may deem appropriate.

(Doc. 1, Exhibit A, COMPLAINT, at 16-19.)

In addition to the foregoing, and to the extent not incorporated in the facts previously set out hereinabove, the plaintiffs' complaint contains the following factual allegations:

6.     State Farm is an insurance company which is engaged in the business of issuing homeowners insurance policies which are marketed and sold by State Farm in Alabama as providing affordable insurance protection to its insurance customers for losses due to fire, among other perils. State Farm holds itself out to the general public in its advertising and promotional campaigns and materials as

(a)     "a good neighbor";

(b)     a leader in the homeowner's insurance marketplace that provides superior products and services when compared to its competitors; and,

(c)     an insurance company that provides timely and fair claims adjustment services for its insureds, sensitive to its insured's needs during time of loss.

7.     These marketing efforts are designed by State Farm to have a two-fold purpose: to persuade potential customers to purchase State Farm insurance and to reassure its present and potential customer base that State Farm will provide financial protection and will treat them fairly.

.     .     .

11.     Ronald Connally, believing and relying, in part, on the advertising and promotional representations of State Farm, submitted an application for homeowner's insurance with State Farm for their new home. . . .

12.     With knowledge of the prior fire loss claim, State Farm nevertheless accepted the application and sold the Connallys a policy of insurance . . . which thereafter insured the Connallys' home against loss by fire, among other perils. The Connallys paid a premium to State Farm for the coverage and were on December 26, 2009, insureds in good standing with State Farm. . . .

13.     Ronald Connally was listed as the named insured on the policy; all members of the Connally family were intended beneficiaries of the policy.

.     .     .

16.     . . . State Farm's duties to investigate and adjust the fire loss within a reasonable time began upon notification of the loss.

.     .     .

22.     . . . State Farm had a duty, upon receipt of [Deese's] report, to reasonably and critically interpret it, construing all doubts in the report in favor of its insured, Ronald Connally. Instead, rather than make an independent determination that the report was not scientifically credible or worthy of consideration, which is obvious from its face, State Farm, Donovan, and/or Defendants A, B, C, D, E, F, G, H, I and J used the report, despite its lack of merit and credibility, *as a pretext to deny the claim so as to avoid paying full benefits due under the policy while also attempting to avoid contractual and bad faith liability to its insured(s).*

.     .     .

24.    . . . State Farm, Donovan, and/or Defendants A, B, C, D, E, F, G, H, I and J, rather than considering <u>all</u> of the evidence and giving the benefit of any reasonable doubt to its insured, willfully chose to ignore this evidence and wrongfully denied the claim.

25.    Throughout the entirety of the claims process, the Connallys cooperated with State Farm and Donovan, providing them with all information requested, including, but not limited to

     (a)    full and complete access to the damaged homestead and possession of its contents;

     (b)    full and complete access to all financial documents, tax returns and other personal information requested by State Farm and Donovan;

     (c)    lengthy examinations under oath given by Ronald and Becki Connally at the offices of State Farm's lawyers; and,

     (d)    executed releases to allow State Farm to obtain various banking, cell phone and other records.

26.    Having fully cooperated with State Farm and Donovan throughout the claims process, the Connallys had a reasonable expectation that State Farm would honor its policy obligations and pay the full fire loss benefits due under the policy.

.    .    .

29.    . . . State Farm has no credible factual basis to support its denial of the claim. ***Alternatively, any alleged fact(s) upon which State Farm purports to base its denial of the claim are fraudulent as to the Connallys and are a mere pretext to support State Farm's wrongful and willful decision to deny the claim so as to avoid potential contractual and bad faith liability to its insured(s).***

.    .    .

32.    The Connallys have consistently, vigorously and categorically denied State Farm's unfounded allegations and have demanded that State Farm honor the terms of the policy.

33.     At all times material, the Defendants, jointly and separately, owed its named insured, Ronald Connally, as well as members of the Connally family, who were intended beneficiaries of the policy, the following duties, among others:

(a)     to objectively investigate and adjust the fire loss fairly within a reasonable time;

(b)     to construe all coverages under the policy broadly so as to find coverage;

(c)     to read all exclusions narrowly so as to not improperly exclude coverage;

(d)     to give the benefit of all doubts as to coverage to the insured;

(e)     *to keep its insured fully informed of the status of the investigation and to not misrepresent or suppress material facts concerning the Defendants['] intentions with respect to the ultimate denial of the claim*;

(f)     to base all claims and coverage decisions upon reliable and credible evidence, not upon speculation, conjecture, or pretextual and fraudulent evidence created for the purpose of denying the claim; and,

(g)     to timely pay all benefits due under the policy.

34.     *State Farm cannot, through its own efforts, create an arguable or debatable reason to deny coverage to the Connallys so as to avoid its contractual obligations under the policy or bad faith liability*.

.     .     .

36.     State Farm, Donovan and/or Defendants A, B, C, D, E, F, G, H, I and J, jointly and separately, have been and are in breach of their respective duties imposed by Alabama law to the Connallys, including all obligations and duties of good faith to the Connallys in the investigation and handling of their claim.

37.     State Farm, Donovan and/or Defendants A, B, C, D, E, F, G, H, I and J, jointly and separately, have defamed and slandered Ronald Connally, and/or members of the Connally family.

38.    As a proximate consequence of the conduct of State Farm, Donovan and[] Defendants A, B, C, D, E, F, G, H, I and J, Ronald and Becki Connally have been injured and damaged, including, but not limited to the following:

(a)    State Farm did not pay all benefits due under the policy, including full value for the home; loss of fair market and/or replacement value in the home due to the delay in adjusting the loss; allowed the home and the contents to be wasted or stolen; caused the Connallys to incur unnecessary interest payments on the home loan with the Bank of Auburn due to the delay in adjusting the loss; reimbursement for damage to and/or loss of the home's contents; and[] other out-of-pocket expenses;

(b)    The Connallys have suffered inconvenience, aggravation, insult and severe emotional distress over the manner in which they were treated by State Farm, acting through Donovan and others. Among other things, the Connallys were required by Defendants to assist in their post-lost "investigation" by

(1)    providing and creating voluminous documents, itemizations, inventories, tax returns, and other materials which took countless hours of work;

(2)    executing releases for personal records to be obtained from third parties such as Bank of Auburn, credit card companies, cell phone providers, and the like;

(3)    providing witness statements and to otherwise be on call to open their home for State Farm's investigators; and[]

(4)    submitting to examinations under oath[.]

All of these efforts were required of the Connallys by Defendants at various times under pretext; in truth, Defendants had every intention of denying the claim once the March 5, 2010, Deese report was received. Defendants suppressed and hid from the Connallys their true intent to deny the claim all along.

(c)    The Connally family was forced to vacate and move to various residences of abode subsequent to the fire upon demand of State Farm resulting in great disruption to their family life which continues to the present day.

(d)     At all times material, Defendants' joint and several conduct was attended by circumstances of insult, contumely or malice and wanton, reckless and conscious disregard and indifference to the rights of each member of the Connally family sufficient to support a claim for punitive damages under Alabama law.

(*Id.* at 3, 4, 5, 6-7, 7-8, 8-10 & 10-12 (some emphasis supplied).)

State Farm was served with the complaint on January 3, 2012 (*compare*  Doc. 1, Notice of Removal, at 1 *with* Doc. 1, Exhibit A, Case Action Summary Sheet) and timely removed this case to this Court on February 2, 2012 in accordance with the first paragraph of 28 U.S.C. § 1446(b) (*see* Doc. 1). In the removal petition, the removing defendants argue that Donovan's citizenship need be disregarded by this Court because "there is no possibility that Plaintiffs can establish any of the alleged causes of action against Donovan." (Doc. 1, at 3)[6]

(c)     Count Four: Defamation/Slander.  There is no possibility Plaintiffs can establish a claim against Donovan for defamation/slander under Alabama state law. Plaintiffs base their defamation/slander claim on the publication of a denial letter dated February 7, 2011. However, Donovan did not participate in the drafting of that letter, nor did she sign or send the letter. Moreover, there has been no other external communication of that denial letter, or the facts upon which the denial was based.

(d)     Count Five: Fraud.

                            .       .       .

---

[6]     As the undersigned has previously indicated, the plaintiffs have conceded that their complaint fails to state negligent/wanton adjustment of the claim and bad faith causes of action as to Donovan (Doc. 15, at 2 n.1); therefore, the undersigned need not consider the removing defendants' arguments contained in the removal petition relating to these claims. In other words, these causes of action play no part in the undersigned's fraudulent joinder analysis.

Plaintiffs do not allege a specific allegation as to Donovan – rather, they simply mention her name in the boiler-plate *ad damnum* clause. Therefore, Plaintiffs have not asserted a fraud claim against her at all. Even if it is argued that by including Donovan's name in the *ad damnum* clause, Plaintiffs have at least attempted to assert a fraud claim against her, Plaintiffs cannot possibly establish a fraud claim against Donovan because: (1) Plaintiffs have not pled an actionable tort; (2) Donovan was in no way involved in the marketing, selling and/or issuance of Plaintiffs' policy, as she is a claims representative and had no contact with Plaintiffs until after State Farm received notification of the fire loss; and (3) specifically as to Plaintiffs' claim for fraudulent suppression in paragraph 61 of the Complaint, Plaintiffs cannot possibly prove that a "confidential relationship" – an essential element to Plaintiffs' fraudulent suppression claim – existed between Donovan and Plaintiffs at the time the allegedly fraudulent conduct occurred, *i.e.*, prior to the issuance of the pertinent policy.

(*Id.* at 5 & 6-7 (internal citations omitted).)  The removing defendants contend, as well, that the requisite jurisdictional amount is readily deducible from the complaint, and supporting documents. (*See id.* at 9-10.) Since the Connallys concede that their claims exceed $75,000, exclusive of interest and costs (Doc. 15, at 2 n.1), there is no need for the undersigned to specifically cite to the evidence that establishes the jurisdictional minimum.

State Farm attached to the removal petition the affidavit of Tony Nix, Team Manager of the Special Investigative Unit for State Farm. (Doc. 1, Exhibit C, Affidavit of Tony Nix.)

2.     . . . Throughout my employment with State Farm, I have been engaged with the handling and adjustment of claims submitted by policy holders of State Farm. At all times material to the matters in this lawsuit, my position with State Farm has been Team Manager of the Special Investigative Unit. My duties as a Team Manager include supervising the investigation of claims for insurance benefits referred to the Special Investigative Unit for handling.

14

.     .     .

4.     I supervised the handling of the claim of the Plaintiffs in this action with respect to a December 26, 2009 fire loss at a dwelling located at 139 Augusta Court, Mobile, AL 36532, which was then insured by State Farm. My testimony in this affidavit concerning the Plaintiffs' claims is based upon my personal knowledge.

.     .     .

9.     The Plaintiffs' fire claim was denied via my letter of February 7, 2011 to Plaintiffs . . . . *Pamela Donovan did not draft, sign or send the denial letter. There has been no other external communication of that denial letter, or the facts upon which the denial was based*.

10.     Pamela Donovan was the claims representative I assigned to investigate Plaintiffs' claims, and whom I supervised throughout the claims handling process. Donovan was in no way involved in the marketing, selling or issuance of Plaintiffs' policy.

(*Id.* (emphasis supplied).)

Plaintiffs filed their motion to remand on February 27, 2012 (Doc. 15)  and,

concurrent therewith, their motion to strike Tony Nix' affidavit (Doc. 13).[7]  In their

---

[7]     Plaintiffs move to strike the Nix affidavit based upon the following reasons: (1) it is defective because it "does not state that the affiant has personal knowledge of the matters [testified] to therein or is otherwise competent or authorized to make the statements contained therein[;]" (2) it "goes to the merits of the underlying claims and has no bearing whatsoever on the issue of whether or not the Connallys' Complaint has the 'possibility' of stating viable state law-based claims against State Farm of Donovan[;]" (3) the second sentence of paragraph nine contains inadmissible hearsay as it "is offered to prove the truth of the matter asserted and would necessarily require the affiant to obtain information from undisclosed and possible third-party sources in order to be true;" and (4) the second sentence of paragraph nine should not be considered by this Court for any purpose since it amounts to "nothing more than a conclusory statement unsupported by any facts or other foundational, evidentiary predicate on the issue of whether there was a 'publication' of the alleged defamatory statements of defendants to 'third parties'." (Doc. 13, at 2-3.) In their response, filed March 12, 2012, the defendants contend that the plaintiffs have offered no basis for striking the affidavit of Tony Nix. (Doc. 20, at 2-4.) Indeed, the defendants respond to all of the reasons plaintiffs have identified for striking the Nix affidavit as follows: (1) the affidavit is not defective because it contains an explicit statement that the affiant's "'testimony in this affidavit concerning the Plaintiffs' claims is based upon [his] personal knowledge[;]'" (2) the undisputed facts in the affidavit "necessarily go *directly to* the issue of whether Plaintiffs can possibly establish the claims asserted against Donovan," and failure to consider the affidavit would run contrary to the Eleventh (Continued)

motion to remand, plaintiffs argue that the defendants have not carried their heavy

burden of establishing fraudulent joinder inasmuch as there certainly is a possibility

that they have stated cognizable claims under Alabama law for defamation and fraud

against the resident defendant. (Doc. 15, at 2-3 & 8-14.)  The undersigned appreciates

the plaintiffs' defamation argument to be that since they allege in their complaint that

Donovan both orally (slander) and in writing (libel) accused them of arson, which

_____

Circuit's decision in *Legg v. Wyeth*, 428 F.3d 1317, 1323-1325 (11th Cir. 2005); (3) the second sentence in paragraph nine is not hearsay because "[a]s drafter of the letter and supervisor of the claim from its inception (including the conduct of Donovan during the claim's handling), Nix has direct personal knowledge as to origin of the letter, the signing of the letter and the sending of the letter[]" and, in addition, Nix "provides testimony that his affidavit testimony is based upon his personal knowledge[;]" and (4) the second sentence of paragraph nine is not a conclusory statement unsupported by any facts since, as aforesaid, "as drafter of the State Farm letter and supervisor of the claim from its inception (including the conduct of Donovan during the claim's handling), Nix has direct personal knowledge as to origin of the letter, the signing of the letter and the sending of the letter." (*Id*. at 2-4.) In reply, plaintiffs make the following arguments:

> First, the Plaintiffs have challenged the legal sufficiency (i.e., admissibility) of the Nix Affidavit in a Motion to Strike[]. The Nix Affidavit, while purporting to be based on 'personal knowledge', must necessarily be based upon impermissible hearsay in order to be true with respect to the factual assertions contained in paragraph 9 of the Affidavit. In that paragraph, Mr. Nix makes a broad, sweeping factual contention that "there has been no other external communication of that denial letter, or the facts upon which the denial was based." . . . This contention is conclusory, self-serving and cannot possibly be based on his "personal knowledge". He was not directly (i.e., boots-on-the-ground) involved in the Connallys' fire loss investigation; what he knows about that investigation he learned from others; unless he is omnipresent, he could not possibly know or speak on behalf of Donovan with respect to the defamation claims. It is more interesting to observe that the affidavits submitted in the **Legg** case were executed by the very individuals who were named as defendants who were arguably fraudulently joined. The Defendants here, oddly, do not submit a sworn affidavit from Donovan disclaiming publication of defamatory/slanderous comments by herself to others. This raises an inference that perhaps she did.

> Additionally, the facts contained in the Nix Affidavit are controverted by the allegations of the Plaintiffs' Complaint itself.

(Doc. 21, at 1-2.)

accusations were published to others, the defendants have not shown by clear and convincing that there is no possibility that the Connallys have stated a defamation claim cognizable under Alabama law against Donovan inasmuch as the Alabama Supreme Court in *Cooper v. Alabama Farm Bureau Mut. Cas. Ins. Co.,* 385 So.2d 630, 632 (1980) recognized that a corporation may be held liable for the post-loss slanderous utterances made by one of its agents if those utterances were made within the line and scope of the agent's employment. (*See id.* at 8-9.) Plaintiffs also maintain that they "have sought to assert post-loss fraud claims against Donovan for fraudulently creating an alleged pretext to deny the claim (i.e., arson) and then suppressing that pretext, among other acts[]" (*id.* at 10) and since "Alabama recognizes a post-loss claim of fraud and suppression/deceit by an insurance adjuster as to the insured[]" (*id.*), looking at the complaint as a whole this Court cannot find that there is no possibility that the state courts of Alabama would find that it [the complaint] does not state a fraud/deceit/suppression claim against Donovan. (*Id.* at 10-12.)[8]

In opposition to plaintiffs' motion to remand, the removing defendants direct the Court's attention first to the fact that the only specific instance of defamation the plaintiffs identify in their complaint is alleged publication of the State Farm denial letter sent in February 2011. (Doc. 19, at 2.) Defendants argue that since plaintiffs have offered no evidence "to dispute the sworn testimony of State Farm's Tony Nix that Donovan

---

[8]     Though conceding that their fraud claims are "not as well pled as the defamation claim," (*id.* at 10), plaintiffs contend that "the possibility exists that any pleading defects with respect to those claims could be 'cured' by amendment in the state court action[,]" such that the defendants have failed to carry their heavy burden of fraudulent joinder (*id.* at 13-14).

never orally and/or in writing defamed Plaintiffs, Donovan did not draft, sign or send the denial letter, or that the only external communication of that denial was to Plaintiffs[,]" under *Legg, supra*, this Court cannot resolve the foregoing facts in plaintiffs' favor based solely upon the unsupported allegations in the complaint. (*Id.* at 2-3; *see also id.* at 4-7.) As for the fraud claim, defendants first argue that it is premised solely on Donovan's alleged promise to perform under the contract and to act in good faith in so doing yet Donovan was not a party to the plaintiffs' contract with State Farm and such failure to perform is not sufficient to support a charge of fraud as reflected by the recent decision by the Middle District of Alabama in *Jenkins v. State Farm Fire & Cas. Co.* (*Id.* at 8-10.) Moreover, defendants argue that plaintiffs have not shown that their fraud claim, as pled, implicates Donovan's conduct inasmuch as the detrimental reliance spoken of in the complaint was purchase of the homeowners policy and Donovan was not involved in the marketing, selling and/or issuance of plaintiffs' policy of insurance. (*See id.* at 10-12.) Finally, defendants argue that plaintiffs are mistaken in arguing that because they can amend their complaint a possibility exists that they could establish a fraud claim as to Donovan since an action amended post-removal cannot divest a court of jurisdiction. (*Id.* at 12-14.) The plaintiffs' reply reads, in relevant part, as follows:

> The Defendants have attacked the defamation claims on the merits and have not addressed *at all* the cases cited by the Connallys in the Motion to Remand which stand for the proposition that an insurance adjuster may be held liable for post-loss defamation as the Connallys have alleged here. See, e.g., **Cooper v. Alabama Farm Bureau Mut. Cas. Ins. Co.,** 385 So.2d 630 (Ala. 1980); Doc. 15, pp. 8-9. The Connallys' Complaint makes claims against State Farm's adjuster, Donovan, for post-loss defamation – a claim recognized by Alabama law. . . . The Defendants have failed to meet their heavy burden by clear and convincing evidence

that the Connallys have no possibility of asserting a defamation claim against Donovan cognizable under Alabama law. **Webb, supra.**

With respect to the fraud claims, . . . the Defendants completely ignore, fail to discuss or otherwise cite or take issue with the cases relied upon by the Connallys which recognize the viability of an insured's claim for post-loss fraud/suppression/deceit under Alabama law against an insurance adjuster. See, e.g., **State Farm Mut. Auto. Ins. Co. v. Ling,** 348 So.2d 472 (Ala. 1977); **Spooner v. State Farm Mut. Auto. Ins. Co.,** 709 So.2d 1157 (Ala. 1997). The Connallys' Complaint contains allegations of post-loss fraud/suppression/deceit committed by Donovan. Complaint, ¶¶ 33(e); 64. Rather than argue the case authorities cited by the Connallys, the Defendants apparently abandon their reliance on **State Farm Fire & Cas. Co. v. Owen**, 729 So.2d 834 (Ala. 1998), and re-emphasize their reliance [] on a[n] Alabama Middle District opinion authored by Judge Keith Watkins which 1) does not address the point; and 2) has little, if any, precedential value on this Court. The Defendants prefer to argue facts which go to the merits as opposed to addressing the seminal issue before the Court; whether there is a *mere possibility* that the fraud/suppression/deceit claims would withstand a Rule 12(b)(6) attack before a state judge.

The fact of the matter is, under Alabama law, the Connallys may maintain a post-loss claim of fraud/suppression/deceit against adjuster Donovan, as they have in the Complaint. It is not the Connallys' burden to demonstrate this. Rather, it is the very high burden of the Defendants to prove *by clear and convincing evidence* that the Plaintiffs have no possibility of stating a cognizable claim for either defamation or fraud/suppression/deceit under Alabama law. In this difficult task and under this heavy burden the Defendants have utterly failed. The Plaintiffs have pulled no claims out of the proverbial "bag of tricks" but, rather, have asserted claims cognizable under state law and are entitled to have their state law claims heard by a state law judge in the venue of their choosing.

(Doc. 21, at 2-3, 3 & 3-4 (emphasis in original; footnote omitted).)

## CONCLUSIONS OF LAW

### A.    Motion to Strike Affidavit.

Plaintiffs have moved to strike the affidavit of Tony Nix, which was attached to the defendants' notice of removal (Doc. 13).  In truth, plaintiffs do not seek to strike the entire affidavit; instead, it is clear from the motion that the plaintiffs simply seek to strike the second and third sentences of the ninth paragraph of the Nix affidavit (*see id.*), which read as follows: "Pamela Donovan did not draft, sign or send the denial letter. There has been no other external communication of that denial letter, or the facts upon which the denial was based." (Doc. 1, Exhibit C, Nix aff., at ¶ 9.)

In reaching the plaintiffs' motion to strike, the undersigned starts by recognizing that "'[t]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, *supplemented by any affidavits and deposition transcripts submitted by the parties.*'" *Legg v. Wyeth,* 428 F.3d 1317, 1322 (11th Cir. 2005) (emphasis in original), quoting *Pacheco de Perez v. AT&T Co.,* 139 F.3d 1368, 1380 (11th Cir. 1998). As explained, consideration of affidavits and deposition transcripts is authorized since "[t]he proceeding appropriate 'for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b).'" *Id.* at 1322-1323 (citations omitted). Because the proceedings are similar, the defendants necessarily must agree, therefore, that since "'inadmissible hearsay cannot be considered on a motion for summary judgment[,]'" *Wilson v. Tillman,* 613 F.Supp.2d 1254, 1262 (S.D. Ala. 2009), quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999), it also cannot be considered in resolving a claim of fraudulent joinder; and that the affiant must be competent to testify on the matters stated and that all matters must be statements of fact based on personal knowledge, *compare* Fed.R.Civ.P.

56(c)(4) *with Hawthorne v. Sears Termite & Pest Control, Inc.,* 309 F.Supp.2d 1318, 1335 (M.D. Ala. 2003) ("Jackson did not have access to Wakenigg's thought processes and her testimony regarding the true meaning of his statement constitutes conclusory speculation. Similarly, Jackson lacks personal knowledge or an adequate basis for any testimony regarding the reasons Sears failed to promote Hawthorne prior to his resignation. Consequently, her opinion as to what the only possible reason Sears had for its decision not to promote Hawthorne is improperly conclusory and speculative.").

　　　With these principles in mind, and there being undeniable evidence in the record that Tony Nix drafted and signed the denial letter dated February 7, 2011 (*see* Doc. 1, Exhibit 3 attached to Nix aff.), the undersigned considers plaintiffs' motion to strike the second and third sentences of paragraph 9 of the Nix affidavit. Initially, the undersigned need recommend that the Court decline to strike the sentences (at least the second sentence of paragraph 9 and the first clause of the third sentence of paragraph 9) on the basis that the affidavit "does not state that the affiant has personal knowledge of the matters [testified] to therein or is otherwise competent or authorized to make the statements contained therein[,]" (Doc. 13, at 2) since Nix explicitly states in his affidavit that his testimony is "based upon [his] personal knowledge." (Doc. 1, Exhibit C, at ¶ 4.) Moreover, since Nix is the employee of State Farm who actually signed the denial letter he is certainly competent to make the following statements: "Pamela Donovan did not draft, sign or send the denial letter. There has been no other external communication of that denial letter[.]" The undersigned discerns nothing conclusory about these particular statements, nor are they based upon inadmissible hearsay;

therefore, the undersigned cannot recommend that these statements be stricken.[9] However, the same cannot be said of the second clause of the third sentence of paragraph nine reading, "or the facts upon which the denial was based." To put this clause in context, the undersigned understands Nix to be averring that there were no other external communications of the facts upon which the denial was based. While, of course, Nix is competent to testify that he made no other external communication of the facts upon which the denial was based, to the extent he means for this Court to infer or imply that Donovan made no other external (oral) communications of the facts upon which the denial was based, the Court should decline to so read his statement in this manner. This is either because the statement made by Nix constitutes conclusory speculation, since he has not set forth an adequate basis for implying that Donovan did not orally defame the plaintiffs,[10] or because the only way Nix could make this statement is by his reliance upon inadmissible hearsay—that is, statements by Donovan (or some other State Farm employee) to him that she did not orally communicate to a

---

[9]    In so ruling, the undersigned does not turn a blind eye to the undeniable fact that Nix relied upon the results of Donovan's investigation of plaintiffs' claims (*see* Doc. 1, Exhibit C, Nix aff., at ¶ 10 ("Pamela Donovan was the claims representative I assigned to investigate Plaintiffs' claims, and whom I supervised throughout the claims handling process.")) in drafting, signing and sending the denial letter dated February 7, 2011. However, recognition of this fact simply does not mean that Nix has not correctly testified that Donovan did not draft, sign or send the denial letter.

[10]    After all, the team manager, Nix, at all times relevant hereto remained in Georgia and was not in Alabama with Donovan during her investigation of the instant fire loss. Therefore, Nix cannot purport to know what Donovan said or did not say to third parties about her investigation and the cause of the fire, unless he obtained such knowledge from Donovan herself. If this is the basis for his statement, then, of course, the statement is based upon inadmissible hearsay.

third party that the plaintiffs' claims were being denied because they were involved in procuring the fire causing their losses.[11] Either way, only Donovan, not Nix, would be competent to give testimony about whether she made any external communication of the facts upon which the denial was based—that is, whether she orally told a third party that the plaintiffs' claims were being denied because they were involved in procuring the fire causing their losses. Because Donovan has not supplied this Court with her affidavit, and this Court should not accept the implicit and speculative testimony of Nix in this regard,[12] taking the facts in the light most favorable to the plaintiffs leaves this Court with the allegations in the complaint that Donovan orally and falsely accused

---

[11]     The undersigned recognizes, of course, that on summary judgment this Court "may consider a hearsay statement if the statement could be reduced to admissible form at trial." *Hill v. Manning,* 236 F.Supp.2d 1292, 1297 (M.D. Ala. 2002) (citation omitted); *see also Hosea v. Langley,* 2006 WL 314454, *8 (S.D. Ala. Feb. 8, 2006) ("[T]he law is clear that 'inadmissible hearsay may sometimes be considered by a court when ruling on a summary judgment motion,' provided that such hearsay is reducible to admissible form at trial.") (citation omitted), *aff'd,* 226 Fed.Appx. 863 (11th Cir. 2007). The problem here is the undersigned cannot discern—and the defendants have not provided this Court with guidance regarding—how any possible statement by Donovan (or another State Farm employee) to Nix that she did not orally defame the plaintiffs can be reduced to an admissible form at trial. In other words, Nix's trial testimony in that respect would still be objectionable as hearsay. Moreover, any suggestion that this Court should consider such statement—regardless of its amorphous, conclusory, speculative and inferential form—since Donovan would give trial testimony consistent therewith does nothing but beg the question of why the resident defendant did not supply her affidavit to this Court.

[12]     In other words, the second clause of the third sentence of paragraph 9 of the Nix affidavit should be **STRICKEN** to the extent defendants ask this Court to read that statement as establishing that Donovan never orally defamed plaintiffs (*see* Doc. 19, at 5 ("Plaintiffs do not provide *any* evidence to dispute Nix's sworn testimony that, as team manager and the direct supervisor of Donovan in her handling of this claim, he has personal knowledge that Donovan **never orally** and/or in writing ***defamed Plaintiffs***[.]" (emphasis supplied))).

Ronald Connally, and/or other members of the Connally household, of procuring the fire that caused the loss and published that accusation to others.

B.    <u>**Jurisdiction in General.**</u>

There can be no doubt but that "[f]ederal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (citation omitted); *see also Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir.) ("[R]emoval statutes should be construed narrowly, with doubts resolved against removal."), *cert. denied*, 540 U.S. 877, 124 S.Ct. 277, 157 L.Ed.2d 140 (2003); *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."); *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]"   (internal citations omitted)). Moreover, the removing defendant must bear "the burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998) (citation omitted); *see also McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction.").

Stated differently, because federal courts are courts of limited jurisdiction "[i]t is . . . presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Kokkonen, supra*, 511 U.S. at 377, 114 S.Ct. at 1675 (internal citations omitted).

Where, as here, jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332 (*see* Doc. 1, at ¶¶ 2 & 4 ("This Court has jurisdiction under 28 U.S.C. § 1332, and removal is proper pursuant to 28 U.S.C. § 1441, in that there is diversity of citizenship among the real and proper parties in interest[.] . . . In addition to diversity of citizenship among the real and proper parties to this cause, this Court has jurisdiction under 28 U.S.C. § 1332, and removal is proper pursuant to 28 U.S.C. § 1441, in that there is a sufficient jurisdictional amount in controversy.")),[13] the removing parties, State Farm and Donovan, bear the burden of establishing complete diversity of citizenship, that is, that the plaintiffs are diverse from all the defendants, *Triggs, supra*, 154 F.3d at 1287 (citation omitted), and, in addition, must establish by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996) ("[W]e hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75,000] jurisdictional

---

[13]     Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.  28 U.S.C. § 1332(a)(1).

requirement."), *abrogated on other grounds by Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir. 2000). Moreover, as a procedural matter, the removal must be timely. *See, e.g., Clingan v. Celtic Life Ins. Co.,* 244 F.Supp.2d 1298, 1302 (M.D. Ala. 2003) ("The time limit in 28 U.S.C. § 1446(b) is 'mandatory and must be strictly applied.'"); *cf. Moore v. North America Sports, Inc.,* 623 F.3d 1325, 1329 (11th Cir. 2010) ("[T]he timeliness of removal is a procedural defect-not a jurisdictional one.").[14]

### C.   Whether Complete Diversity of Citizenship Exists.

As previously indicated, the diversity statute, 28 U.S.C. § 1332, demands complete diversity, such that plaintiffs may not be citizens of the same state as any defendant. *See, e.g., Florence v. Crescent Resources, LLC,* 484 F.3d 1293, 1297 (11th Cir. 2007) (recognizing "necessary corollary" of diversity jurisdiction that "complete diversity of citizenship" is required); *Legg, supra,* 428 F.3d at 1320 n.2 ("28 U.S.C. § 1332 requires 'complete diversity'-the citizenship of every plaintiff must be diverse from the citizenship of every defendant.").

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs, supra,* 154 F.3d at 1287. Notwithstanding the complete diversity requirement, a non-diverse defendant who is fraudulently joined does not destroy jurisdiction because her citizenship is excluded from the diversity equation. Under well-settled law, a finding of fraudulent joinder is appropriate in

---

[14]     The plaintiffs do not argue that the instant removal petition was not timely filed (*see* Doc. 15) and have specifically conceded that their "claims exceed the minimum diversity jurisdictional amount of $75,000.00, exclusive of [interest and] costs." (*Id.* at 2 n.1.) Thus, the sole issue before this Court is whether complete diversity of citizenship exists.

circumstances presented here only if "'there is *no possibility* the plaintiff can establish a cause of action against the resident defendant.'" *Henderson v. Washington Nat'l Ins. Co.,* 454 F.3d 1278, 1281 (11th Cir. 2006) (emphasis supplied; citation omitted); *see also Florence, supra,* 484 F.3d at 1299 ("[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary."); *Triggs,* 154 F.3d at 1287 ("'If there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.'"). Thus, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Id.* (citation omitted); *see also Pacheco de Perez, supra,* 139 F.3d at 1380 ("Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court.").

"The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties. . . . In making its determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez,* 139 F.3d at 1380 (citations omitted); *see also Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir. 1997) ("To determine whether the case

should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. . . . The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties."); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989) ("In addressing the issue of fraudulent joinder, the district court should resolve all questions of fact and controlling law in favor of the plaintiff and can consider any submitted affidavits and/or deposition transcripts.").

> While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b)," the jurisdictional inquiry "must not subsume substantive determination." Over and over again, we stress that "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits."

*Crowe, supra*, 113 F.3d at 1538 (internal citations omitted).

"In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.'" *Pacheco de Perez*, 139 F.3d at 1380-1381 (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)).

> In terms of this circuit's law, the main point for us is this one: For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff,

there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved." Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them.

In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we have said that district courts may look beyond the face of the complaint, we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent.

*Crowe*, 113 F.3d at 1541-1542 (internal citations omitted).

Because the removing defendants must show by clear and convincing evidence that there is no possibility the plaintiffs can establish a cause of action against the resident defendant, *Henderson,* 454 F.3d at 1281, it is no surprise that courts describe the burden on the removing parties to prove fraudulent joinder as a "heavy one." *Crowe,* 113 F.3d at 1538 (citation omitted).

Since the Connallys and Donovan are Alabama citizens for diversity purposes, State Farm and Donovan predicate removal jurisdiction under § 1332 on their argument that Donovan's citizenship does not count in the diversity analysis since she was fraudulently joined. The analysis in this case has been distilled down to whether a possibility exists that plaintiffs can establish a defamation or fraud claim against the resident defendant.[15] (*See* Doc. 15.) Indeed this case has been distilled down even

---

[15]    As previously indicated, plaintiffs concede in their motion to remand that they have no possibility of establishing a bad faith claim or negligent claims handling claim against Donovan (*see* Doc. 15, at 2 n.1). This concession is made for good reason, as plaintiffs have no possibility of establishing either of these claims against Donovan. *See, e.g., Kervin v. Southern Guaranty Ins. Co.,* 667 So.2d 704, 706 (Ala. 1995) ("[T]his Court has consistently refused to (Continued)

further, in the undersigned's opinion, to whether a possibility exists that plaintiffs can

establish a defamation claim against Donovan, given their admission that their fraud

count is "not as well pled as the defamation claim," and their attempt to reconstruct

their claim in arguing that they "have sought to assert post-loss fraud claims against

Donovan for fraudulently creating an alleged pretext to deny the claim (i.e., arson) and

then suppressing that pretext, among other acts." (Doc. 15, at 10 (citing ¶¶ 22 & 33(e) of

the complaint); *see also* Doc. 21, at 3 (citing ¶¶ 33(e) & 64 of the complaint).)[16]

---

recognize a cause of action for the negligent handling of insurance claims[.]"); *Ligon Furniture Co., Inc. v. O.M. Hughes Ins., Inc.*, 551 So.2d 283, 285 (Ala. 1989) ("The tort of 'bad faith' is not a cognizable cause of action in Alabama, except in the context of a breach of an insurance contract by a ***party*** to that insurance contract[.]" (emphasis supplied; internal citations omitted)).

[16]     In particular, nowhere in the complaint do the plaintiffs specifically assert a cause of action for post-loss suppression against Donovan (*see* Doc. 1, Exhibit A, COMPLAINT), plaintiffs' arguments to the contrary notwithstanding (*compare* Doc. 15, at 1 ("On December 23, 2011, the Connallys filed suit against State Farm and Donovan, alleging various state law claims including . . . pre- and post-loss fraud and/or suppression.") *with* Doc. 21, at 3 ("The Connallys' Complaint contains allegations of post-loss fraud/suppression/deceit committed by Donovan."). Indeed, Count Five, alleging fraud and deceit, unequivocally sets forth only a pre-loss misrepresentation claim against State Farm, not Donovan (Doc. 1, Exhibit A, COMPLAINT, at 18, ¶¶ 60-64); Donovan is only mentioned in the *ad damnum* clause (*see id*. at 19).  This is, of course, not surprising since Donovan was not involved with the Connallys when they purchased the policy from State Farm. The only mention of the word suppression in Count Five is in paragraph 64, plaintiffs making the allegation that "[a]s a proximate consequence of this fraud, ***suppression*** and deceit, Ronald Connally and his family have suffered damages as aforesaid and claim all compensatory damages due to them under Alabama law." (*Id*.) Plaintiffs nonetheless encourage this Court to find that a post-loss suppression claim can be "cobbled together" by combining the language in paragraph 64 with that contained in paragraphs 19, 22 and 33(e) (*see* Doc. 1, Exhibit A, COMPLAINT, at  ¶¶ 19, 22 & 33(e) ("State Farm, acting through Donovan and/or others, hired Harold Deese[], as well as Perry Hopkins[], to investigate and opine as to the cause and origin of the fire and to rule out causes of the fire loss for anything other than arson. . . . On or about March 5, 2010, Deese issued a report to State Farm in which he opined that the fire which occasioned the loss was intentionally set. . . . State Farm had a duty, upon receipt of this report, to reasonably and critically interpret it, construing all doubts in the report in favor of its insured, Ronald Connally. Instead, rather than make an independent determination that the report was not scientifically credible or worthy of consideration, which is (Continued)

obvious from its face, State Farm, Donovan, and/or Defendants A, B, C, D, E, F, G, H, I and J, used the report, despite its lack of merit and credibility, as a pretext to deny the claim so as to avoid paying full benefits due under the policy while also *attempting to avoid contractual and bad faith liability to its insured(s)*. . . . At all times material, the Defendants, jointly and separately, owed its named insured, Ronald Connally, as well as members of the Connally family, who were intended beneficiaries of the policy, the following duties, among others: . . . (e) to keep its insured fully informed of the status of the investigation and to not misrepresent or suppress material facts concerning the Defendants intentions with respect to the ultimate denial of the claim[.]" (emphasis supplied)). Because fraud must be pled with particularity under Alabama law, *see, e.g.,* Ala.R.Civ.P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."), the undersigned simply cannot find that the plaintiffs have alleged a post-loss suppression claim against Donovan, *cf. Hardy v. Blue Cross & Blue Shield of Alabama,* 585 So.2d 29, 32 (Ala. 1991) ("To make out a prima facie case of fraudulent suppression, Hardy must show: (1) that Blue Cross had a duty to disclose; (2) that Blue Cross suppressed an existing, material fact; (3) that Blue Cross had actual knowledge of the fact and its materiality; (4) that her lack of knowledge induced her to act; and (5) that she suffered actual damage as a proximate result."); a more thorough and explicit bad faith claim or breach of contract claim, yes, but not a post-loss suppression claim. For purposes of this Court's fraudulent joinder analysis, the undersigned cannot consider the fact that the plaintiffs may be able to state such a claim against Donovan in an amended complaint since the determination of whether a resident defendant has been fraudulently joined is based upon the plaintiffs' "pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties[,]" *Pacheco de Perez, supra,* 139 F.3d at 1380, and "[p]ost-removal filings may not be considered [] when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court." *Griggs v. State Farm Lloyds,* 181 F.3d 694, 700 (5th Cir. 1999); *see also Widder v. State Farm Fire & Cas. Co.,* 2010 WL 4386698, *2 (E.D. Cal. Oct. 28, 2010) ("In deciding whether joinder was fraudulent, the court will not look at post-removal filings to the extent they introduce new causes of action or legal theories."); *King v. Provident Life & Accident Ins. Co.,* 2010 WL 2730890, *2 (E.D. Tex. June 4, 2010) ("Because the petition as filed in state court controls the inquiry, post-removal filings may not be considered when or to the extent that they present new causes of action or theories."), *report & recommendation adopted by* 2010 WL 2730888 (E.D. Tex. July 9, 2010); *see Cavallini v. State Farm Mutual Auto Ins. Co.,* 44 F.3d 256, 263 & n.14 (5th Cir. 1995) (finding no case law supporting the plaintiffs' assertion that post-removal affidavits can be used to defeat removal by presenting new causes of action against the nondiverse defendant not alleged in the state court complaint); *cf. Nelson v. Whirlpool Corp.,* 727 F.Supp.2d 1294, 1304 & 1305 (S.D. Ala. 2010) ("Allowing a post-removal amendment to eliminate jurisdiction that existed at the time of removal would [] nullify the well-established rule that the determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal. That rule prevents a plaintiff from avoiding a fraudulent joinder determination (and thus securing remand) by amending the complaint, before a ruling on the fraudulent joinder issue, to insert a previously excluded viable claim. But the rule would be rendered pointless if a plaintiff could simply wait until after a fraudulent joinder determination, then make the same amendment and thereby secure remand. Nothing presented (Continued)

Under Alabama law, "[t]he elements of a cause of action for defamation are: 1) a false *and* defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement." *McCaig v. Talladega Publishing Co., Inc.,* 544 So.2d 875, 877 (Ala. 1989) (emphasis in original; citation omitted); *see also Drill Parts & Service Co., Inc. v. Joy Manufacturing Co.,* 619 So.2d 1280, 1289 (Ala. 1993) (same); *Blevins v. W.F. Barnes Corp.,* 768 So.2d 386, 390 (Ala. Civ. App. 1999) ("The elements of a cause of action for defamation are 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence; and 4) either actionability of the statement irrespective of special harm [(per se)] or the existence of special harm caused by the publication of the statement [(per quod)]." (internal quotation marks omitted)); *see Atkins Ford Sales, Inc. v. Royster,* 560 So.2d 197, 200 (Ala. 1990) ("To establish a prima facie case of defamation, the plaintiff must show that the defendant published a false and defamatory statement concerning the plaintiff to a third person."). "There are two types of defamation: libel,

---

to the Court commends such an implausibly tortured result. . . . [T]he post-removal assertion of a viable cause of action against a fraudulently joined defendant does not strip the Court of subject matter jurisdiction that existed at the time of removal."). Thus, the plaintiffs' argument that they would be afforded the opportunity to amend their complaint cannot be utilized to prevent a finding of fraudulent joinder or otherwise strip this Court of subject matter jurisdiction.

which involves the use of print media to publish the defamatory comment, and slander, which involves the oral expression of a defamatory comment." *Blevins, supra,* citing Michael L. Roberts & Gregory S. Cusimano, *Alabama Tort Law*, § 24.0.1 (1996). Finally, it is clear under Alabama law that an insurance agent/adjuster can be liable for libeling or slandering her insureds. *Cooper v. Alabama Farm Bureau Mut. Cas. Ins. Co., Inc.,* 385 So.2d 630, 631-632 (Ala. 1980) (recognizing not only that an insurance agent can be individually held liable for slanderous statements but, as well, that "a corporation may be held liable for a slanderous utterance made by one of its agents if the slanderous utterance was made within the line and scope of the agent's employment."); *see also Foley v. State Farm Fire & Cas. Ins. Co.,* 491 So.2d 934, 934-935 & 937 (Ala. 1986) (affirming jury verdict in favor of insurance company and its agent, Kenneth Baker, on issues of breach of contract and slander where the allegedly defamatory statement was made by the agent).

In this case, given plaintiffs' allegations against Donovan, as previously set forth, it is clear that they have alleged claims of libel and slander per se with respect to the resident defendant. *Compare Blevins, supra,* at 390 ("'In cases of libel, if the language used exposes the plaintiff to public ridicule or contempt, though it does not embody an accusation of crime, the law presumes damage to the reputation, and pronounces it actionable per se. [To] constitute slander actionable per se, there must be an imputation of an indictable offense involving infamy or moral turpitude . . . .'") *with* Ala.Code § 13A-7-42(a) ("A person commits the crime of arson in the second degree if he intentionally damages a building by starting or maintaining a fire or causing an

explosion.") and *Waters v. Jones,* 3 Port. 442, 1836 WL 1325, *3 (Ala. June Term, 1836) ("To burn a cotton house, is made arson, by statute; an offence, involving a great deal of moral turpitude . . . To maintain an action for slander, it is not necessary that the charge of a crime should be direct and positive-the imputation may be inferred from an indirect communication."). Given, of course, plaintiffs' failure to dispute the affidavit statements of Nix that Donovan did not draft, sign or send the denial letter dated February 7, 2011—or that there was no other external communication of that letter to anyone other than the plaintiffs, through their attorney—plaintiffs simply have no chance of establishing a libel per se claim against Donovan. This is both because Donovan did not author the defamatory statement/letter concerning the plaintiffs and because that defamatory statement, implying their guilt of arson, was not published to a third party, *see Watters v. Louisiana Pacific Corp.,* 156 Fed.App. 177, 179, 2005 WL 3150516, *1 (11th Cir. Nov. 28, 2005) ("[T]he publication element is generally satisfied where the defamatory matter was communicated to someone other than the plaintiff[.]").

As aforesaid, however, and for reasons that need not be reiterated, it is the undersigned's opinion that the Nix affidavit cannot be read as establishing, as an evidentiary matter, that Donovan did not orally utter a slanderous statement to a third party accusing the plaintiffs of procuring the fire that caused their losses. The undersigned thus considers whether, based on the allegations of the complaint, plaintiffs have a possibility of establishing a claim of slander per se against Donovan. Succinctly stated, plaintiffs allege in their complaint that Donovan orally and falsely

accused Ronald Connally, and/or other members of the Connally household, of procuring the fire that caused the loss and published that accusation to others. (*See* Doc. 1, Exhibit A, COMPLAINT, at ¶¶ 52-56.) While the complaint does not specify the third party to whom Donovan is alleged to have published the allegedly false and slanderous statement accusing plaintiffs of arson, there is no requirement under Alabama law that the complaint be so specific. Indeed, the Alabama Supreme Court has recognized that construction of a plaintiff's pleading alleging libel and slander "is governed by Rule 8(f), Ala.R.Civ.P., which states that '[a]ll pleadings shall be so construed as to do substantial justice.' 'In order to do substantial justice, pleadings are to be construed liberally in favor of the pleader.'" *Poff v. Hayes*, 763 So.2d 234, 241 (Ala. 2000) (citations omitted); *see also* Rule 8, Ala.R.Civ.P., Committee Comments ("Rule 8 is expressly intended to repudiate the long standing doctrine in Alabama of construing the pleadings strictly against the pleader, when ruling on demurrer."); *cf. Ex parte Stenum Hosp.*, 81 So.3d 314, 317-318 (Ala. 2011) (citing the provisions of Rule 8(a) and noting that "[i]t is settled law that the purpose of notice pleading is to provide a defendant with adequate notice of the claims against it and that, pursuant to the rules of pleading, a court will construe a pleading liberally to effect the purpose of the Alabama Rules of Civil Procedure."). Thus, in *Poff*—where plaintiff alleged that on June 16, 1994 and on many numerous other occasions the defendant libeled and slandered him and the defendant claimed that the complaint pertained solely to acts committed on June 16, 1994, "and that the phrase 'and on many other numerous occasions' ha[d] no legal significance[]"—the Supreme Court disagreed with "Poff's assertion that the vague

language in the complaint regarding dates of publication-the phrase 'and on many other occasions'-is meaningless[]" and ultimately determined, in reversing the trial court's grant of summary judgment in favor of Poff, that Poff's statute of limitations argument was due to be rejected. 763 So.2d at 241.

Given that Alabama is a notice-pleading state and Donovan, through the current pleadings filed on her behalf, has certainly recognized the defamation claims asserted against her, this Court simply cannot find that plaintiffs have no possibility of establishing that Donovan slandered them because of the simple failure to specifically identify the third party to whom the publication of the slanderous utterance was made. Inasmuch as the undersigned has previously determined that Nix is not competent to testify that Donovan did not orally slander the plaintiffs, this Court is left with the complaint allegations that Donovan orally and falsely accused Ronald Connally, and/or other members of the Connally household, of procuring the fire that caused the loss and published that accusation to others. These allegations, and the remaining allegations of the plaintiffs' complaint, track the elements of a cause of action for defamation in Alabama and while plaintiffs might ultimately be unsuccessful on the merits of this claim, it is one that they have a possibility of establishing and which need be decided, at its earliest, on summary judgment. *See, e.g., Watters, supra,* 156 Fed.App. at 179 ("[T]he district court was clearly correct in granting summary judgment based on the lack of any evidence of publication to a third party."); *Temploy, Inc. v. National Council on Compensation Ins.,* 650 F.Supp.2d 1145, 1157 (S.D. Ala. 2009) (granting summary judgment in favor of defendant on plaintiff's claim of defamation); *Williams v. Wal-Mart*

*Stores, Inc.,* 2000 WL 1367977, *4 (S.D. Ala. Sept. 5, 2000) (granting summary judgment in favor of defendant on plaintiff's defamation claim); *Lightfoot v. Floyd,* 667 So.2d 56, 69-70 (Ala. 1995) (finding the grant of summary judgment in favor of the defendants on the plaintiff's claims of defamation proper); *Drill Parts & Serv. Co., Inc., supra,* 619 So.2d at 1290 (affirming summary judgment as to the plaintiffs' defamation claim); *McCaig, supra,* 544 So.2d at 879 ("Because truth is always an absolute defense to any action for libel or slander, this court must affirm the trial court's summary judgment as to the McCaigs' defamation claim."); *Foley, supra,* 491 So.2d at 934-935 & 937 (affirming jury verdict in favor of insurance company and its agent, Kenneth Baker, on issues of breach of contract and slander); *Cooper, supra,* 385 So.2d at 630 (reversing and remanding the trial court's "order granting a motion for summary judgment in favor of defendant Alabama Farm Bureau Mutual Casualty Insurance Company[.]"); *Blevins, supra,* 768 So.2d at 391, 392 & 393 (affirming summary judgment for Barnes on the slander count and for the newspaper on the libel claim but reversing the grant of summary judgment "as to Blevin's defamation claim based upon the letter to the attorney general's office[.]").   In other words, there certainly exists in this case a reasonable basis for predicting that Alabama law might impose liability on Donovan based upon circumstances alleged in the complaint. Thus, the standard for proving fraudulent joinder has not been met and it is necessary that this Court remand this action to state court.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that plaintiff's motion to remand (Doc. 15) be **GRANTED** and that this case be remanded to the Circuit Court of Mobile County, Alabama from whence it came.

The instructions which follow the undersigned's signature contain important information  regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 22nd day of May, 2012.

 s/WILLIAM E. CASSADY
**UNITED S TATES MAGISTRATE JUDGE**

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      *Objection.*  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[17] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded).*  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[17]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).